## *In re* STATE BANK, Insolvent.

Argued May 21, 1894.   Affirmed May 25, 1894.

No. 8802.

**Division of opinion between two Judges of the District Court in Hennepin County.**

Where two judges of the District Court in Hennepin county sit together in the hearing of a cause, if there is a division of opinion, the opinion of the judge senior in office is the opinion of the court.

**Payment of fees of Assignee of insolvent debtor.**

Where an assignee in insolvency has failed to comply with the order of the court to turn over all money and property in his hands to his successor, it is not error for the court to refuse to pass upon and allow his account for services and disbursements until he complies with the order.

**Assignee's fees adjusted by the court from its knowledge of his services as its officer.**

In passing upon the account of the assignee, the court is not confined to the evidence formally introduced on the hearing, but, in determining the reasonableness of the account, may use his own personal knowledge of what has been done by the assignee in the proceedings, and of the general nature and extent of his services.

Appeal by George H. Fletcher former assignee of the insolvent State Bank of Minneapolis, from an order of the District Court of Hennepin County, *Henry G. Hicks* and *Charles M. Pond*, JJ., made November 25, 1893, allowing in part and disallowing the residue of his final account as such assignee.

On June 27, 1893, the State Bank made an assignment of its property under Laws 1881, ch. 148, as amended to George H. Fletcher in trust for its creditors. He accepted the trust, gave bond and discharged the duties of that office until August 12, 1893, when he resigned. His resignation was accepted at once and he was ordered to turn over to his successor all property and money in his hands. On August 17, 1893, William J. Hahn was appointed in his stead and accepted the trust. Fletcher filed his final account as assignee on August 23, 1893, and obtained an order that W. J. Hahn his successor and all parties interested show cause, if any they had, on September 23, 1893, why his report and account should not be approved and allowed. Notice of the hearing was ordered to be given by mailing a printed copy of the order to all creditors named in the schedule of liabilities of the bank. About one hundred and fifty of the creditors by their attorney appeared and filed a verified statement of facts and objections to the account and various items thereof. The hearing was adjourned from time to time until November 25, 1893, when the report and account and the objections thereto were heard before Judges *Henry G. Hicks* and *Charles M. Pond* sitting together at Special Term. Oral evidence was heard by them and reduced to writing, signed and verified by the witnesses and filed with the clerk. The judges also in passing upon items of the account considered and acted upon facts observed by them in directing the assignee, an officer of the court, acting under its authority.

The court allowed for postage, rent, stamped envelopes, printing notices, clerk hire, sheriff's and clerk's fees, but rejected traveling expenses, stenographer's charges and copying. Fletcher reported that he had received from the insolvent and collected on claims a total of $8,643.14 and had on August 22, 1893, paid $5,000 thereof to Hahn his successor, but had retained the residue to cover his charges, attorney's fees and disbursements. He claimed $1,500 for his services and $1,080 for his attorney's fees and $851.38 for disburse-

ments. The court, citing *In re Shotwell*, 49 Minn. 170, reduced the assignee's fees to the percentage allowed by Laws 1889, ch. 30, § 8, on moneys actually collected, viz. to $368.62, and reduced the attorney's fees to $400, and the disbursements to $412.44. The two Judges disagreed upon some of the items and the order was consequently signed only by *Hicks*, the Judge senior in office. Laws 1881 (Ex. Sess.) ch. 84, § 3. Fletcher was indebted to the bank at the time of its assignment, on his notes to it over $5,000 and in view of this fact the order provided that; "The balance of the funds belonging to the estate of the insolvent bank now in the hands of the said George H. Fletcher be, within five days after notice of this order, paid over to William J. Hahn, Esq., the present assignee of said insolvent bank, and that until such payment is made in conformity with this order, no allowance whatever will be made to the said George H. Fletcher for his fees, disbursements and expenses incurred while acting as such assignee as aforesaid." Fletcher appeals from the order, assuming it to be final, not interlocutory. 1878 G. S. ch. 86, § 8, subd. 6.

*J. F. McGee*, for appellant.

*John W. Arctander*, for respondents.

MITCHELL, J. The short facts are that on June 27th the State Bank of Minneapolis, being insolvent, made an assignment for the benefit of its creditors to one Fletcher, a stockholder and director of the bank, and a debtor to it in the sum of over $5,000, of which $1,500 was overdue. Fletcher entered upon the duties of his office, as assignee, June 30th. On August 12th he resigned, and on August 17th the court made an order appointing his successor, and requiring him to deliver over to such successor all property or money of the bank in his hands. At this time, Fletcher had in his hands $8,643.14, of which over $6,200 was practically money which the bank had on hand at the time of the assignment. The remainder was money which Fletcher had collected by his own exertions. On August 22d, Fletcher paid over to his successor $5,000, and no more. On or about August 24th, he filed his report, in which he claimed for his services and disbursements, during the month and a half he had acted as assignee, the sum of $3,431.38. A large number of the creditors of the bank objected to the allowance of

any part of the account, for the reason, among others, that he was in contempt of court, in not obeying its order to pay over to his successor all the money in his hands. They also objected to numerous items of the account, either as unreasonable in amount, or as not being proper disbursements.

Judge Hicks, who held the special term, designated Judge Pond as to the judge to hear the matter. Judge Pond refused to hear it unless Judge Hicks would sit with him. The two judges sat together on the hearing; Judge Hicks, the senior in office, presiding, and rendering the decision, and making the order of the court. Judge Pond filed a memorandum opinion dissenting from some of the views of Judge Hicks, but made no order. The order filed by Judge Hicks required Fletcher to pay over to his successor the full balance of $3,643.14 remaining in his hands; refused to allow any of his account, unconditionally, because he had failed to obey the original order of the court, but provisionally allowed such part of it as the court found reasonable and just, to wit, $1,238.96, in case he first paid over the moneys in his hands to his successor. The order further provided that the amount thus allowed should be applied on Fletcher's indebtedness to the bank. Although this part of the order is assigned as error, yet, not being included in the points and authorities relied on, it will be deemed waived.

1. Waiving the question of its appealability, we are of the opinion that the order filed by Judge Hicks was the order of the court.

It is immaterial that the matter was originally assigned to Judge Pond for hearing. The fact was that it was heard by the two judges together, and, if there was any division of opinion, the opinion of the presiding judge (the senior in office) would be the opinion of the court. Laws 1881 (Ex. Sess.) ch. 84, § 3; Laws 1889, ch. 152, § 1. If his order is not the order of the court, then there is nothing to appeal from, because Judge Pond never made any order.

2. The court had a right to insist that Fletcher should first obey its previous order to pay over all the money in his hands to his successor, before it would allow his claim for services and disbursements. As well said by the learned judge, it is all wrong for an assignee to retain out of its assets what he claims to be due him, after he has been ordered to pay over all that is in his hands, and before his account for fees has been passed upon by the court. His

place was to pay over everything to his successor, as ordered, and then present his account to the court for allowance and payment.

3. It is impracticable to go in detail over the different items in the account disallowed in whole or in part. We have examined them, and fail to find any error in the action of the court. The evidence, which was in the form of affidavits, was conflicting. Moreover, the correctness of the conclusions of the court as to the allowance of the assignee's account is not to be determined, as in ordinary cases, exclusively upon the evidence formally introduced on the hearing. The court in which the proceedings were pending has personal knowledge of much that has been done by the assignee, and of the general nature and extent of his service; and this knowledge, we think, he may rightfully use, in determining what would be a fair compensation. A bill of over $3,400 for services and disbursements for less than a month and a half seems, in the light of all that appears to have been done, a very extravagant one. The court was justified in pruning it down very materially, and, upon the whole, we do not think any injustice has been done to appellant.

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 315.)